UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JERAMIE CARLSSON,

                                    Petitioner,

        v.

TIMOTHY FILSON, *et al.*,

                                    Respondents.

Case No. 3:17-cv-00120-MMD-WGC

ORDER

I.      **SUMMARY**

        Petitioner Jeramie Carlsson filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Court for adjudication of the merits of the remaining grounds in the petition. For the reasons discussed below, the Court denies the petition, denies a certificate of appealability, and directs the Clerk of Court to enter judgment accordingly.

II.     **BACKGROUND**

        Carlsson's convictions are the result of events that occurred in Washoe County, Nevada on or about May 9 and 10, 2012. (ECF No. 12-3.) During the grand jury proceeding, Martin Culp testified that he noticed a vehicle had crashed into a rock on his way to Truckee Meadows Community College. (ECF No. 12-2 at 5-7.) Culp pulled his vehicle over to aid the individuals, one of whom was Carlsson, who were standing outside the vehicle. (*Id.* at 7-8.) Carlsson approached Culp's vehicle and opened the driver's door, asking Culp to give him a ride for some money. (*Id.* at 8.) When Culp refused, indicating that he had a class to go to, Carlsson leaned into Culp's vehicle, and when Culp pushed him out, Carlsson "punched [Culp] in the face and tried to grab the keys" to the vehicle. (*Id.* at 9.) Culp and Carlsson "started to struggle for the keys, and

at that point, [Carlsson] acted like he had a gun" by "lift[ing] up his shirt." (*Id.*) Culp "didn't see anything," but it was his impression that Carlsson had a gun. (*Id.* at 9-10.) Carlsson then instructed the other individuals to put some cases in the bed of Culp's truck, threw Culp out of the vehicle, got in Culp's vehicle with the other individuals, and drove away. (*Id.* at 10-11.)

Michael Mulkey, an acquaintance of Carlsson, testified before the grand jury that he ran into Carlsson at the Grand Sierra Resort and Hotel while Carlsson was "out running around dropping off dope" and agreed to accompany Carlsson to a storage unit. (*Id.* at 16-18.) Carlsson, Mulkey, and two females eventually ended up near Truckee Meadows Community College and went "four-wheeling . . . up the side of the mountain." (*Id.* at 19.) Mulkey testified that Carlsson had a .40-caliber pistol in his waistband and a rifle and shotgun in his vehicle. (*Id.* at 19-20.) Carlsson hit a rock while "four-wheeling" and told his passengers that he was "going to offer somebody a hundred dollars to use their vehicle." (*Id.* at 21.) Later, after Carlsson approached an individual driving a truck, Mulkey, at Carlsson's instruction, moved a rifle, shotgun, and other bags from Carlsson's vehicle to other individual's truck, and Carlsson, Mulkey and the two females got into the other's individual's truck and drove away. (*Id.* at 22.) They went to a trailer park, Mulkey unloaded the weapons and other bags, and then Carlsson indicated that he was going to take the individual's truck back. (*Id.* at 22-23.) When Carlsson returned, he borrowed a sedan, and Carlsson, Mulkey and one of the females went to the Western Village Inn and Casino so that Carlsson could "drop off some dope." (*Id.* at 23-24.) After leaving the Western Village Inn and Casino, a police officer tried to pull the sedan over, but Carlsson sped away. (*Id.* at 25.) When Carlsson eventually stopped the vehicle, after evading the police officer, Mulkey got out of the vehicle and, as he was walking away, was apprehended by law enforcement and arrested. (*Id.* at 26-27.)

Detective Sergeant Aaron Leary testified before the grand jury that the damaged vehicle left near Truckee Meadows Community College had paperwork in it indicating that the vehicle belonged to Carlsson. (*Id.* at 40-41.) That paperwork included a room

registration for the Western Village Inn and Casino. (*Id.* at 41.) Detective Leary went to that location and observed a vehicle that he suspected was driven by Carlsson. (*Id.* at 30, 33-34.) When Detective Leary activated his emergency lights, the vehicle turned into an apartment complex and then accelerated quickly through a school zone. (*Id.* at 35.) Because there was a lot of traffic and pedestrians present outside of the school, Detective Leary discontinued his pursuit of Carlsson "in an effort to slow him down." (*Id.* at 36.)

Officer Byron Cragg testified before the grand jury that he received information that Carlsson was located at a La Quinta Inn. (*Id.* at 43-44.) Carlsson was located by law enforcement and proceeded to run from those law enforcement officers. (*Id.* at 45.) Carlsson jumped a fence, discarded his backpack, and started running again. (*Id.* at 46-47.) At that point, Officer Jones "deployed [a] less lethal round" that hit Carlsson in the leg, causing him to fall to the ground. (*Id.* at 47.) When Carlsson fell to the ground, a police K-9 attacked Carlsson's right leg. (*Id.*) When Officer Cragg approached Carlsson, Carlsson "came up holding a knife" and "was going to strike the K-9" with the knife. (*Id.* at 47-48.) Officer Cragg grabbed Carlsson's arm and told him to let go of the knife, but Carlsson refused. (*Id.* at 48.) Officer Cragg then broke Carlsson's arm, and Carlsson dropped the knife. (*Id.* at 48-49.) After Carlsson was taken into custody, as an officer was taking pictures of Carlsson's injuries, Carlsson spit on the officer. (*Id.* at 58.) A search of Carlsson's backpack revealed 11.6 grams of methamphetamine. (*Id.* at 58-59.)

Carlsson was indicted on the following charges: robbery with the use of a firearm, battery with intent to commit robbery, trafficking in a controlled substance, resisting and/or obstructing and/or delaying a public officer with a dangerous weapon, eluding a police officer, and unlawful acts related to human excrement or bodily fluid. (ECF No. 12-3.) Following plea negotiations, Carlsson pleaded guilty to robbery with the use of a firearm, resisting and/or obstructing and/or delaying a public officer with a dangerous

weapon, and eluding a police officer.[1] (ECF Nos. 12-16, 12-17.) Carlsson was sentenced to 72 to 180 months for the robbery conviction with a consecutive 48 to 120 months for the weapon enhancement; 19 to 48 months for the resisting and/or obstructing and/or delaying a public officer with a dangerous weapon conviction, to run consecutively to the robbery with the use of a firearm conviction; and 28 to 72 months for the eluding a police officer conviction, to run consecutive to the previous two convictions. (ECF No. 13 at 2-3.) Carlsson appealed, and the Nevada Supreme Court affirmed. (ECF No. 13-12.) Remittitur issued on January 13, 2014. (ECF No. 13-13.)

Carlsson filed a state habeas petition on February 28, 2014. (ECF No. 13-17.) Carlsson then filed a counseled, supplemental petition on July 3, 2014. (ECF No. 13-22.) Following an evidentiary hearing, the state district court denied the petition. (ECF Nos. 14, 14-1.) Carlsson appealed, and the Nevada Court of Appeals affirmed. (ECF No. 14-17.) Remittitur issued on July 18, 2016. (ECF No. 14-18.)

Carlsson filed his federal habeas petition on August 22, 2017. (ECF No. 9.) Respondents moved to dismiss the petition on October 5, 2017. (ECF No. 11.) Carlsson responded to the motion to dismiss and moved to file an amended petition. (ECF Nos. 17, 18.) This Court denied Carlsson's motion to amend and granted, in part, Respondents' motion to dismiss. (ECF No. 25 at 1.) Specifically, this Court determined that Grounds 1(b),[2] 2(b), and 3(a) were unexhausted. (*Id.* at 3.) Carlsson later abandoned Grounds 1(b), 2(b), and 3(a). (ECF No. 26.) Respondents answered the remaining grounds in Carlsson's petition on October 22, 2018. (ECF No. 27.) Carlsson did not reply.

In his remaining grounds for relief, Carlsson asserts the following violations of his federal constitutional rights:

1(a).   His trial counsel failed to mitigate his sentence.

---

[1]In addition to other charges being dismissed, Carlsson avoided being charged as a major habitual criminal, which carried a potential life imprisonment sentence, by entering this plea. (ECF No. 14 at 45.)

[2]This Court mistakenly identified Ground 1(b) as Ground 1(a) in its order.

1(c).   His trial counsel failed to present family members to speak on his behalf at sentencing.

2(a).   His trial counsel failed to secure a written agreement regarding his right to appeal the weapon enhancement.

3(b).   His trial counsel was ineffective for failing to obtain a written agreement regarding his right to appeal the weapon enhancement.

(ECF No. 9 at 3-7.)

## III.   LEGAL STANDARD

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than

incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV.    DISCUSSION

Carlsson's remaining grounds for reliefs involve allegations that his trial counsel was ineffective. In *Strickland*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the

proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles* [*v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").

The Court will address Carlsson's remaining four grounds.

### A. Grounds 1(a) and 1(c)

In Ground 1(a), Carlsson argues that his federal constitutional rights were violated when his trial counsel failed to mitigate his sentence. (ECF No. 9 at 3.) In Ground 1(c), Carlsson argues that his federal constitutional rights were violated when his trial counsel failed to present family members to speak on his behalf at sentencing.

(*Id.*) In its order affirming the denial of Carlsson's state habeas petition, the Nevada Court of Appeals held:

> Carlsson claims counsel was ineffective for failing to present witnesses in mitigation of sentence. Carlsson claims several family members would have testified about his character when he was not using methamphetamine. Carlsson fails to demonstrate prejudice because he fails to show there was a reasonable probability of a different outcome at sentencing had the witnesses been presented given the serious nature of the crimes and his prior criminal history. Therefore, the district court did not err in denying this claim.

(ECF No. 14-17 at 3.) The Nevada Court of Appeal's rejection of Carlsson's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Counsel's performance at the penalty phase is measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688. And this Court "must avoid the temptation to second-guess [counsel's] performance or to indulge 'the distorting effects of hindsight.'" *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689). But "judicial deference to counsel is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." *Id.* When challenging a trial counsel's actions in failing to present mitigating evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable.*" *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) (emphasis in original).

Carlsson's trial counsel did not introduce any mitigating evidence at Carlsson's sentencing hearing. (*See* ECF No. 12-30.) Carlsson's trial counsel simply asked that the state district court "not . . . max out the defendant . . . on the[ ] various charges" and, instead, give Carlsson "some ray of hope and some amount of leniency." (*Id.* at 16-17.) Carlsson's trial counsel commented that Carlsson "is a relatively young man, and based

on the sentence that the court is going to likely impose, . . . he's going to be a whole lot older when he gets out." (*Id.* at 17.) Carlsson then addressed the state district court and commented:

> [E]verything that [the State] said about me is true. Everything [Carlsson's trial counsel] said is true, too. I mean I just got out of prison. I was good for a year-and-a-half, granted, I did - - did good, everything I needed to do. I was working. I had a run-in with me and my girlfriend, and we ended up splitting up and I started using methamphetamine again. And everybody is well aware - - the officers, everybody knows how I get when I use - - when I use that drug, it's disregard for everything. I mean, I don't even care about myself at the time I'm doing anything, you know, I - - it's just running around with my head cut off, Your Honor.
>
> I am, I ain't going to deny anything. I mean, I did not have a gun when the - - when the crime occurred, I didn't have it. I punched the victim. I did, Your Honor. But as far as a gun, I know better than, you know, messing with guns and stuff like that.
>
> But when I get - - when I get high - - I mean, I'm not making no excuses for the court or anything like that. I'm here to accept responsibility for what I did, Your Honor.
>
> It's a little - - I know your hands are tied as far as any kind of drug program or anything like that. Like, I need serious help. I really do. That's coming from deep in my heart. Something's got to give, because I'll - - if I ain't - - if I ain't back in front of you, I will be in a body bag, Your Honor. I mean, it's just - -  something - - something's go to - - I've go to - - I've got to learn I can't - - I can't use drugs no more. I cannot. I mean, if I get high again, like right now, I am going to kill myself or, you know, or somebody else or - - it's just, I can't do it, Your Honor.
>
> Like I said, I'm here to accept responsibility for what I did. I want to apologize to the community for the havoc I have wreaked. You know, I'm just - - if you can show me some kind of - - I am not going to ask for - - you know, you're going to be my judge, I am here to accept responsibility for my actions, Your Honor.

(*Id.* 23-24.)

Before imposing Carlsson's sentence, the state district court went through Carlsson's criminal history on the record, indicating that Carlsson had five prior felony convictions. (*See id.* at 25-27; *see also* ECF No. 16-1 (presentence investigation report showing that Carlsson had five felony convictions, one gross misdemeanor conviction,

and six misdemeanor convictions that resulted in a total of eight incarcerations).) The state district court then explained:

> Mr. Carlsson, the days that you are getting breaks from courts, I would suggest to you, are over. The Court considers many things in deciding what an appropriate punishment is with a defendant. As both [the State] and [Carlsson's trial counsel] know, the court has to consider rehabilitation, community safety, punishment, and deterrence. Those are the four primary things that the Court looks at, at different levels and at different times in your criminal history.
>
> And frankly, sir, at this point, your criminal history and what you did in this case, simply cry out that community safety needs to be primary, followed by punishment for what you did, and then subsequent to that, deterrence, deterring not only you from committing future crimes, but other people from behaving the way that you did.
>
> And then finally, regarding rehabilitation. Mr. Carlsson, as you yourself stated, my hands are tied. There is no way I can give you a drug treatment program because you are going to the Nevada State Prison as a result of your guilty plea in Count No. 1, and I wouldn't have considered it anyway.

(ECF No. 12-30 at 27-28.)

A little over two years later, a post-conviction evidentiary hearing was held on Carlsson's state habeas petition. (*See* ECF No. 14.) Carlsson testified at that evidentiary hearing that he expected his family members to be present and to testify on his behalf at his sentencing hearing. (*Id.* at 61.) Carlsson explained that he arranged to have various witnesses—including his father, brother, daughter, daughter's mother, and previous supervisor—testify about his character at his original sentencing hearing date and that he told these witnesses to contact his trial counsel. (*Id.* at 65-68.) However, his original sentencing date was continued, so he gave his proposed witnesses' contact information to his trial counsel in order for his trial counsel to inform them of the new sentencing date. (*Id.* at 67-68.) Carlsson did not remember whether he informed his proposed witnesses personally about the new sentencing date. (*Id.* at 69.)

Carlsson's trial counsel also testified at the evidentiary hearing and explained that, in order to prepare for sentencing, he spoke with Carlsson, reviewed the file, and reviewed the presentence investigation report. (*Id.* at 39.) Carlsson's trial counsel did

not remember speaking with Carlsson's family members or asking Carlsson if any of his family members would be able to appear at the sentencing hearing. (*Id.*) Carlsson's trial counsel also did not remember why he did not use Carlsson's family members as sources of mitigating evidence at Carlsson's sentencing. (*Id.* at 50.)

Gary Curtis Shaffer, Carlsson's father, testified at the evidentiary hearing that Carlsson suffered from a methamphetamine addition. (*Id.* at 51-52.) Shaffer explained that when Carlsson is not using methamphetamine, "he's a bright, very personable, really easygoing guy" who "makes friends very easy" and gets promoted quickly at work. (*Id.* at 52.) Shaffer further explained that when Carlsson is sober, he does not have problems with law enforcement and is "a good kid." (*Id.*) Carlsson's last job was at Hobey's Casino where he got many promotions. (*Id.*) When Carlsson started using methamphetamine again after separating from his significant other, "he disassociated himself [from family and] his daughter. He just isolated himself from everybody. Nobody knew where he really was, what he was doing." (*Id.* at 53.)

Because Carlsson's trial counsel did not remember why he did not present Carlsson's witnesses at the sentencing hearing, it is difficult to assess his alleged deficiency. *See Wiggins*, 539 U.S. at 522-23. However, even if Carlsson's trial counsel was deficient, the Nevada Court of Appeals reasonably determined that Carlsson fails to demonstrate prejudice. *See Strickland*, 466 U.S. at 694.

First, Carlsson's father's testimony about Carlsson's methamphetamine addition and Carlsson's behavior when he is using and not using methamphetamine was similar to Carlsson's own statement during the sentencing hearing. (*Compare* ECF No. 14 at 51-52, *with* ECF No. 12-30 at 23-24.) Further, the state district court was well aware of Carlsson's substance abuse history from the presentence investigation report. (ECF No. 16-1 at 4.) Second, the state district court indicated at Carlsson's sentencing hearing that it was sentencing Carlsson primarily based on community safety concerns due to Carlsson's criminal history and his actions in this case. (ECF No. 12-30 at 27-28.) Carlsson's family members' and supervisor's proposed testimonies would have only

discussed Carlsson's character and would not have touched upon the state district court's primary sentencing concerns. Accordingly, Carlsson fails to demonstrate that "there is a reasonable probability that, but for" his trial counsel's potential failure to call witnesses at his sentencing hearing, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective-assistance-of-counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing"). Indeed, this conclusion is supported by the state district court's statement in its order denying Carlsson's state habeas petition that it "was familiar with [Carlsson's] substance abuse and criminal history" and that "[h]ad [it] known everything allegedly not presented [at sentencing,] it would have reached the same result." (ECF No. 14-1 at 5.)

Moreover, regarding Carlsson's generic claim in Ground 1(a) that his trial counsel failed to mitigate his sentence, Carlsson fails to explain what mitigating evidence— beyond presenting character witnesses—or argument his trial counsel should have presented. This failure to support Ground 1(a) with specific allegations does not warrant the granting of relief. *See, e.g.*, *Jones v Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

Because the Nevada Court of Appeals reasonably denied Carlsson's ineffective-assistance-of-counsel claim, Carlsson is denied federal habeas relief for Grounds 1(a) and 1(c).

### B. Grounds 2(a) and 3(b)

In Grounds 2(a) and 3(b), Carlsson argues that his federal constitutional rights were violated when his trial counsel failed to secure a written agreement regarding his right to appeal a pre-plea weapon enhancement issue.[3] (ECF No. 9 at 5, 7.) In its order

---

[3]Respondents argue that Ground 3(b) should be dismissed because it is duplicative of Ground 2(a). (ECF No. 27 at 12.) In its order granting, in part, Respondents' motion to dismiss, this Court previously deferred ruling on this issue. (ECF No. 25 at 4.) Although Grounds 2(a) and 3(b) are identical, because they lack merit, this Court simply denies them.

affirming the denial of Carlsson's state habeas petition, the Nevada Court of Appeals held:

> Carlsson claims counsel was ineffective for failing to preserve in writing his right to appeal whether there was sufficient evidence to support the grand jury's probable cause determination regarding the use of a deadly weapon. Carlsson fails to demonstrate he was prejudiced. While counsel failed to preserve the right to appeal in writing, Carlsson was able to appeal the issue and the Nevada Supreme Court issued a merit determination on that issue. *See Carlsson v. State*, Docket No. 63506 (Order of Affirmance, December 16, 2013). Therefore, the district court did not err in denying this claim.

(ECF No. 14-17 at 3.) The Nevada Court of Appeal's rejection of Carlsson's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Following his indictment, Carlsson filed a pre-trial habeas petition, arguing that the grand jury did not have sufficient evidence to charge him with the deadly-weapon enhancement for robbery. (ECF No. 12-13.) Before the state district court could rule on that petition, Carlsson agreed to plead guilty to robbery with the use of a firearm, resisting and/or obstructing and/or delaying a public officer with a dangerous weapon, and eluding a police officer. (ECF Nos. 12-16, 12-17.) At the plea hearing, Carlsson's trial counsel explained that it was "reserving the right to appeal whether in fact there was sufficient evidence to show a firearm was used in this case." (ECF No. 12-16 at 5.) Carlsson's trial counsel also explained that "the right to appeal the weapons portion of the robbery [charge was] not included in the Guilty Plea Agreement, but that [it was] sort of a side agreement [he had] made with [the State] that [he] wanted to be part of the record." (*Id.* at 6.) Carlsson later moved to strike the deadly-weapon enhancement, arguing that he should only be sentenced for the underlying robbery. (ECF No. 12-20.) The state district court denied the motion at Carlsson's sentencing hearing. (ECF No. 12-30 at 10.)

Carlsson appealed his judgment of conviction, and the Nevada Supreme Court held:

Appellant Jeramie Raymond Carlsson contends that the district court erred by denying his pretrial petition for a writ of habeas corpus because there was insufficient evidence to support the grand jury's determination that he used a firearm to commit the robbery. Although the transcript of the district court's plea canvass clearly reflects that Carlsson entered a conditional guilty plea with the consent of the district court and district attorney, Carlsson did not reserve his right to appeal from the judgment of conviction *in writing* as is required by NRS 174.035(3). Even if this issue had been properly preserved, Carlsson would not be entitled to relief. The transcript of the grand jury proceeding demonstrates that there was sufficient evidence to support the grand jury's probable cause determination. *See* NRS 172.155(1); *Sheriff v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) ("The finding of probable cause may be based on slight, even 'marginal' evidence because it does not involve a determination of the guilt or innocence of an accused." (internal citations omitted)).

(ECF No. 13-12 at 2-3 (emphasis in original) (internal footnote omitted).)

Carlsson later testified at the post-conviction evidentiary hearing that it was his intention to appeal the deadly-weapon enhancement of his robbery conviction because he denied having a firearm when he robbed Culp. (ECF No. 14 at 54-56.) Carlsson explained that when he entered his guilty plea to robbery with the use of a firearm, he expected that the deadly weapon enhancement issue would be appealed after sentencing and would get overturned. (*Id.* at 59.)

Carlsson's trial counsel explained at the post-conviction evidentiary hearing that when he told the State that Carlsson was going to accept the plea deal, Carlsson's trial counsel indicated to the State that his "client would still like to be able to litigate the issue with respect to the weapon," to which the State responded, "I don't care." (*Id.* at 27.) Carlsson's trial counsel then explained that he "thought by making the record at the time of the entry of plea" and filing the motion to strike the enhancement, he was preserving the issue for appellate review. (*Id.* at 27, 32.) However, Carlsson's trial counsel admitted that he "may have been remiss in not asking for a continuance so [the right to appeal the deadly weapon enhancement issue] could be in the written language of the plea agreement." (*Id.* at 26.) Carlsson's trial counsel also admitted that he could not think of

1  a reason why he did not have the State sign a written agreement to retain the
2  appealability of the deadly weapon enhancement issue. (*Id.* at 32-33.)

3      At the post-conviction evidentiary hearing, the prosecutor in Carlsson's case
4  confirmed that there was an agreement between the State and Carlsson's trial counsel
5  that Carlsson "was going to enter his guilty plea to that charge but he was free to litigate
6  that issue beyond the district court level." (ECF No. 14 at 7, 10.) The prosecutor
7  explained that he did not include Carlsson's right to appeal the deadly weapon
8  enhancement issue in the plea memorandum because Carlsson's trial counsel "didn't
9  ask [him] to put in in there and [he] didn't think it was important." (*Id.* at 13.)

10      As Carlsson's trial counsel explained at the evidentiary hearing, "the entry of a
11  guilty plea traditionally waives non-jurisdictional issues that arise prior to the entry of the
12  plea." (ECF No. 14 at 47.) As Carlsson's trial counsel and the prosecutor in Carlsson's
13  case both testified, there was a verbal agreement in place reserving Carlsson's right to
14  appeal the deadly weapon enhancement issue to avoid this waiver. (*Id.* at 10, 27.)
15  However, Carlsson's trial counsel failed to seek to include the reservation of this right in
16  the plea agreement or in a written document, instead opting to put the verbal agreement
17  on the record. (*Id.* at 27.) As the Nevada Court of Appeals reasonably noted, Carlsson's
18  trial counsel erred in this regard. *See* NRS § 174.035(3) ("With the consent of the court
19  and the district attorney, a defendant may enter a conditional plea of guilty, . . . reserving
20  *in writing* the right, on appeal from the judgment, to a review of the adverse
21  determination of any specified pretrial motion." (Emphasis added)).

22      However, even if Carlsson's trial counsel was deficient in failing to reserve
23  Carlsson's right to appeal in writing, the Nevada Court of Appeals also reasonably held
24  that Carlsson fails to demonstrate prejudice. *See Strickland*, 466 U.S. at 688, 694. As
25  the Nevada Court of Appeals reasonably explained, the Nevada Supreme Court—
26  regardless of the error made by Carlsson's trial counsel—addressed the merits of
27  Carlsson's claim that there was insufficient evidence to support the grand jury's
28  determination that he used a firearm to commit the robbery in his direct appeal. (*See*

ECF No. 13-12 at 2-3.) Therefore, Carlsson fails to demonstrate that "there is a reasonable probability that, but for" his trial counsel's failure to reserve his right to appeal in writing, "the result of the proceeding would have been different," since the Nevada Supreme Court addressed the issue on appeal notwithstanding the error. *Strickland*, 466 U.S. at 694.

Because the Nevada Court of Appeals reasonably denied Carlsson's ineffective-assistance-of-counsel claim, Carlsson is denied federal habeas relief for Grounds 2(a) and 3(b).

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Carlsson. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, the Court finds that a certificate of appealability is unwarranted.

## VI. CONCLUSION

It is therefore ordered that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 9) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 14th day of April 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE